United States District Court
Southern District of Texas

**ENTERED**

July 03, 2025

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| SUEROS & BEBIDAS REHIDRATANTES, S.A. de C.V. and CAB ENTERPRISES, INC., | Civ. Action No.: 4:24-cv-04012 |
| Plaintiffs, | |
| v. | |
| CANDY REGIA USA, LLC, JOSE L BARBA GARCIA, KEVIN BARBA DE LA MORA and DOES 1-10, | **(JURY DEMAND)** |
| Defendants. | |

## FINAL JUDGMENT

**I.    INTRODUCTION**

Plaintiffs Sueros & Bebidas Rehidratantes, S.A. de C.V. ("Sueros") and CAB Enterprises, Inc. ("CAB") (collectively, "Plaintiffs"), filed this action against Defendants Candy Regia USA, LLC and Jose L. Barba Garcia ("Defendants"), to prevent the unlawful importation and sale of foreign-manufactured rehydration beverages bearing Plaintiffs' trademarks. The Parties stipulate to the following findings of fact and conclusions of law, and consent to entry of a permanent injunction as set forth below. Accordingly, the Court enters the following:

II.    FINDINGS OF FACT

Plaintiffs are engaged in the promotion, sale, and distribution of Electrolit®

branded rehydration beverages marked with their Electrolit® trademarks (the

"Electrolit Marks"). Plaintiff Sueros is the owner of the Electrolit Marks and

Plaintiff CAB holds an exclusive license to them in the United States.   CAB

authorizes use of the Electrolit Trademarks only in connection with its U.S.

Electrolit® product.

The Electrolit Marks are registered with the United States Patent and

Trademark Office ("USPTO") as U.S. Reg. Nos. 4222726, 4833885, 4717350, and

4717232.  The Electrolit Marks are valid, subsisting, and have acquired extensive

recognition in Texas and the United States and represent valuable goodwill.  Three

of the Electrolit Marks, U.S. Reg. Nos. 4222726, 4717350, and 4717232, have

become incontestable under 15 U.S.C. §§ 1065 and 1115(b).

Versions of Electrolit® products are sold in the United States and abroad;

however, Electrolit® authorized for sale in the United States ("U.S. Electrolit®")

is different from the version of Electrolit® that are sold elsewhere in the world

("Unauthorized Electrolit") in ways that are significant to customers' and

consumers' purchasing decisions.  For example, packaging and labeling on bottles

of genuine U.S. Electrolit® contain text written exclusively in English, while

packaging and labeling applied on bottles of Unauthorized Electrolit contain

Spanish.  As another example, genuine U.S. Electrolit® products contain the unique, U.S. Electrolit® formula, while Unauthorized Electrolit contains a different formula.  As another example, labels on genuine U.S. Electrolit® products identify all ingredients in the product and include FDA-compliant "Nutrition Facts." Labels on Unauthorized Electrolit products do not, because those products are only authorized to be sold outside the United States where different labeling regulations apply.  As another example, labels on genuine U.S. Electrolit® products list a U.S. toll-free number for customers to call with comments or complaints.  Labels on Unauthorized Electrolit products do not list a U.S. toll-free number because they are not authorized to be sold in the United States.  As another example, packaging on genuine U.S. Electrolit® states that the product is gluten-free and sweetened with natural glucose, while Unauthorized Electrolit does not include those statements.  As another example, packaging on genuine U.S. Electrolit® uses imperial measurements (e.g., fluid ounces) that U.S. consumers are accustomed to whereas Unauthorized Electrolit packaging uses metric measurements (e.g., milliliters) that international consumers are accustomed to.  As another example, packaging on genuine U.S. Electrolit® does not make health claims regarding the product because such pharmaceutical-like claims have not yet been approved by the FDA. Unauthorized Electrolit packaging, by contrast, contains health claims that it treats and prevents dehydration that comply with

applicable regulations in the countries where Unauthorized Electrolit is authorized to be sold. As another example, packaging on genuine U.S. Electrolit® lists a "USE BY" date that informs retailers and consumers about the freshness and the quality of the product. Packaging on Unauthorized Electrolit does not list a "USE BY" date. As another example, packaging on genuine U.S. Electrolit® includes bottle deposit refund information applicable in the United States and written in English, while Unauthorized Electrolit packaging does not. Plaintiffs do not sell, authorize for sale, or cause to be sold within the United States any nonconforming products containing the differences between Unauthorized Electrolit and genuine U.S. Electrolit®.

Each of the foregoing differences are relevant to consumers' purchasing decisions and are material such that use of the Electrolit Marks in connection with the sale of Unauthorized Electrolit will cause a likelihood of confusion.

Defendants sold Unauthorized Electrolit bearing the Electrolit Marks that were not authorized for sale in the United States by Plaintiffs. Defendants' acts began after the Electrolit Marks became famous in Texas and the United States.

Plaintiffs have devoted substantial resources to combat and police the sale of unlawful, mislabeled, and counterfeit product being illegally imported, distributed, advertised, offered for sale, and sold by infringers and counterfeiters.

III.   CONCLUSIONS OF LAW

The sale, offering for sale, distribution, or advertising of Unauthorized Electrolit violates the Lanham Act and constitutes Texas common-law trademark infringement, Texas common-law unfair competition, Texas Unfair Competition under Tex. Bus. & Com. Code Ann. § 17.46, and unjust enrichment if it is likely to cause confusion as to the source, affiliation or sponsorship of the product. 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1)(A); *Okwesilieze Women's Club of Nig. Int'l v. De Okwesilieze Int'l Women's Club*, No. H-20-2845, 2021 U.S. Dist. LEXIS 221967, at *18 (S.D. Tex. Nov. 16, 2018).

A gray market good is a foreign-manufactured good, bearing a valid United States trademark, which is imported without the consent of the United States trademark holder. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 285 (1988). "When dealing with … gray goods, a reviewing court must necessarily be concerned with subtle differences, for it is by subtle difference that consumers are most easily confused." *Societe Des Produits Nestle, S.A.*, 982 F.2d 633, 641 (1st Cir. 1992) (adopted by *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1301–02 (5th Cir. 1997) ("We are persuaded that the Nestle/OAA test, which finds infringement if the goods sold by the authorized domestic distributor and the defendant's foreign goods are materially different, is a sound one . . . .")). Thus, in gray-goods cases, the "threshold of materiality is always

quite low." *Id.* "[T]he existence of any difference . . . that consumers would likely consider to be relevant when purchasing a product creates a presumption of consumer confusion sufficient to support a Lanham Act claim." *Id.* Material differences may include differences in the physical or non-physical attributes of the product, packaging, and labeling differences. *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 311 (S.D.N.Y. 2007) (collecting cases); *Bayer Corp. v. Custom Sch. Frames, LLC*, 259 F. Supp.2d 503, 509 (E.D. La. 2003) ("Even the use of British English spellings on the [f]oreign [p]roduct instead of American English spellings is a material difference." (citing *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 753 F. Supp. 1240, 1244 (D.N.J. 1991)).

In the present case, Unauthorized Electrolit is materially different from U.S. Electrolit in some of the ways discussed above. The presence of these material differences creates a likelihood of confusion resulting from the sale, offering for sale, distribution, or advertising of Unauthorized Electrolit. There is no evidence that the disclosures or disclaimers placed on the packaging of the Unauthorized Electrolit were effective to dispel any likelihood of confusion or comply with applicable FDA regulations.

The Lanham Act is "a strict liability statute." *Signal Prods. v. Am. Zurich Ins. Co.*, 2013 U.S. Dist. LEXIS 179933, at *13 (C.D. Cal. Dec. 19, 2013) (citing 15 U.S.C. § 1125(a)). Accordingly, "ignorance is no defense to violations of the

Lanham Act." *Philip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (citing 15 U.S.C. § 1114); *see also N. Face Apparel Corp. v. Dahan*, 2014 U.S. Dist. LEXIS 206310, at *31 (C.D. Cal. Oct. 6, 2014) (collecting cases).

Thus, as a matter of law, the importation, sale, offering for sale, distribution, or advertising of Unauthorized Electrolit in the United States constitutes trademark infringement, false designation of origin, common law and state unfair competition under Texas Business and Commercial Code § 17.46 and has resulted in unjust enrichment. In addition, the sale of Unauthorized Electrolit tarnishes Plaintiffs' valuable business reputation and goodwill and is likely to blur the distinctiveness of the famous Electrolit Marks. As such, the sale, offering for sale, distribution, or advertising of Unauthorized Electrolit constitutes trademark dilution under the Lanham Act and in violation of Tex. Bus. & Com. Code § 16.103.

As a result of the sale, offering for sale and distribution of Unauthorized Electrolit, Plaintiffs have been harmed, including harm to their goodwill in the Electrolit Marks, harm to their reputation, price erosion, and lost sales and profits. Furthermore, Plaintiffs would be irreparably harmed by continued sale of Unauthorized Electrolit.

Considering the balance of hardships between Plaintiffs and Defendants, a remedy in equity is warranted. The interests of the public will not be disserved by

a permanent injunction. To the contrary, the public will be served by an injunction to prevent any confusion. Accordingly, Plaintiffs are entitled to permanent injunctive relief.

IV.    ORDER

For the foregoing reasons, it is **ORDERED, ADJUDGED,** and **DECREED** that:

1.    This Court has jurisdiction over the parties and the subject matter of this action; and

2.    Defendants, their owners, partners, subsidiaries, affiliated companies, and the officers, directors, principals, agents, servants, and employees of all of them and all others in active concert or participation with Defendants are permanently enjoined and restrained from:

a.    Purchasing for resale, selling, distributing, marketing, manufacturing or otherwise using any of the Electrolit Marks (as defined in the Complaint (Doc. 1 at ¶30)) or any marks confusingly similar thereto in connection with the manufacture, sale, offer for sale, distribution or advertisement of any product, including Unauthorized Electrolit.

b.    Using any logo, trade name or trademark confusingly similar to any of the Electrolit Marks which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of

any or all of the Restrained Parties or others are sponsored by, authorized by or in any way associated with Plaintiffs;

      c.      Manufacturing, importing, duplicating, advertising, selling or distributing any infringing and/or counterfeit Electrolit product;

      d.      Infringing any of the Electrolit Marks;

      e.      Falsely representing any or all of the Defendants as being connected with plaintiffs or sponsored by or associated with Plaintiffs or engaging in any act which is likely to cause the trade, retailers and/or members of the purchasing public to believe that any or all of the Restrained Parties are associated with Plaintiffs;

      f.      Using any reproduction, counterfeit, copy, or colorable imitation of any of the Electrolit Marks in connection with the publicity, promotion, sale, or advertising of Unauthorized Electrolit;

      g.      Affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Electrolit® and from offering such goods in commerce;

      h.      Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (2.a.) through (2.h.) above; and

i.    Engaging in assignments or transfers, formation of new entities or associations or utilization of any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this order.

**SO ORDERED**:

Date: 7/3/25

United States District Judge

**AGREED AS TO FORM AND SUBSTANCE:**

Jose L. Barba Garcia, for himself and as owner and director and on behalf of Defendant Candy Regia USA, LLC